UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

———

No. 6:22-cv-00241

———

**Devone Leach,**
*Plaintiff,*

v.

**Specialty Hospital, LLC d/b/a UT Health East Texas
Long Term Acute Care,**
*Defendant.*

———

## ORDER AND OPINION

Plaintiff Devone Leach alleges that defendant interfered with her Family and Medical Leave Act ("FMLA") rights, retaliated against her for exercising FMLA rights, and discriminated against her on the basis of sex in violation of Title VII and the Texas Commission on Human Rights Act.[1]

A magistrate judge issued a report recommending that defendant's motion for summary judgment be granted in part and denied in part.[2] Defendant timely filed written objections to that report,[3] and plaintiff submitted a response to the objections.[4] The court reviews the objected-to portions of the magistrate judge's report and recommendation de novo.[5] For the reasons below, the court sustains defendant's objections regarding FMLA retaliation and Title VII but overrules defendant's objections as to FMLA interference. Accordingly, defendant's motion for summary judgment[6] is granted in part and denied in part.

---

[1] Doc. 23. In this order and opinion, references to the Title VII claim also include the Texas Commission on Human Rights Act claim because, as the magistrate judge's report stated, the two are functionally identical for the purposes of plaintiff's case. Doc. 43 at 1 n.1 (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 403 n.2 (5th Cir. 1999)).

[2] Doc. 43.

[3] Doc. 52.

[4] Doc. 55.

[5] *See* Fed. R. Civ. P. 72; 28 U.S.C. § 636(b)(1).

[6] Doc. 29.

1. **Background**

The following factual recitation is taken from the undisputed facts and plaintiff's sufficient factual allegations, construed in the light most favorable to her.

In 2016, defendant hired plaintiff as a charge nurse at the Long Term and Acute Care Hospital ("the hospital").[7] In August 2018, plaintiff was promoted to director of nursing ("DON") at the hospital.[8] At the time, plaintiff reported to Valerie McCormick, who acted as both Chief Nursing Officer ("CNO") and Administrator of the hospital.[9] In 2019, McCormick resigned, and her role was filled by two people: Laurie Lenhof-Watts as CNO and Jimmy Clark as Administrator.[10]

In June 2020, Lenhof-Watts conducted plaintiff's 2019 performance review.[11] Plaintiff was told that she needed to engage more with her staff and provide them with more timely feedback.[12] She was also told that she "can be very quiet at times and appears to be closed off."[13]

In August 2020, Clark met with plaintiff and provided verbal coaching, which was documented in writing.[14] Specifically, Clark had received complaints that plaintiff did not "follow through on items brought to her attention by direct reports," that she addressed her subordinates "in a condescending tone when providing feedback," that text messaging was her "primary form of communication" and often misrepresented her tone, and that three nurses had resigned in the span of one week.[15] Plaintiff was "surprised to learn of these concerns, but was very receptive to the feedback."[16]

---

[7] Doc. 29-1 at 45.
[8] *Id.*
[9] *Id.* at 9, 11.
[10] *Id.* at 9–10.
[11] *Id.* at 14, 48–53; Doc. 29-2 at 3.
[12] Doc. 29-1 at 14–15.
[13] *Id.* at 15.
[14] Doc. 29-2 at 4; Doc. 29-3 at 27.
[15] Doc. 29-3 at 27.
[16] *Id.*

In September 2020, defendant conducted its annual employment survey.[17] Plaintiff's results were below average when compared to all managers who worked at hospitals that share an owner with defendant.[18] Based in part on this survey, Clark decided to place plaintiff on a performance improvement plan ("PIP").[19]

In early November 2020, plaintiff had a meeting with Clark and Lenhof-Watts about the PIP.[20] Shortly after this meeting, Lenhof-Watts was replaced as CNO by Shawna Pippin,[21] and plaintiff informed all involved that she was pregnant with her fourth child.[22]

Plaintiff's PIP period was to last 90 days from November 9, 2020, to February 9, 2021.[23] Pippin was to coach plaintiff during this period on her leadership, public speaking, and interpersonal skills.[24] Pippin took contemporaneous notes of plaintiff's development. The final note says: "February 2021 – Due to the surge in COVID and staffing challenges, we are going to continue to work with [plaintiff] and see how she does over the next few months."[25]

In early 2021, plaintiff requested FMLA leave to care for her expected child from June 25 through August 5, 2021, which was approved.[26] Plaintiff discussed with Pippin and Clark the matter of who would fill her role while she was on FMLA leave.[27] Plaintiff strongly recommended Jason Carter-Mead, who was ultimately selected.[28]

On March 26, 2021, plaintiff met with Clark and Pippin to go over her 2020 performance review.[29] The review indicated that Pippin's "guidance has and will continue to be great" but that "[t]here remains opportunity for improvement [in] emotional intelligence

---

[17] Doc. 29-1 at 17–18.
[18] Doc. 29-2 at 6.
[19] *Id.* at 9; Doc. 29-5 at 3.
[20] Doc. 29-1 at 17; Doc. 29-2 at 9.
[21] Doc. 29-1 at 20; Doc. 29-2 at 10.
[22] Doc. 29-2 at 11; Doc. 29-4 at 10; Doc. 29-5 at 5.
[23] Doc. 29-3 at 35.
[24] Doc. 29-1 at 24; Doc. 29-2 at 10; Doc. 29-4 at 6–7.
[25] Doc. 29-4 at 19.
[26] Doc. 29-1 at 26, 54.
[27] *Id.* at 27, 63–64.
[28] *Id.*
[29] *Id.* at 21.

(i.e. body language, tone, and overall energy [when] communicating/interacting with others)."[30] Plaintiff received a rating of "Low Performance or Developing" in the categories of "Hire, Educate, and Retain Exceptional Caregivers" and "People."[31] However, plaintiff received an overall rating of "Good Performance," a merit increase, and a substantial leadership bonus.[32]

Plaintiff went into labor earlier than expected, so her leave began on June 15.[33] According to Pippin, employee engagement improved significantly while Carter-Mead was handling plaintiff's duties.[34] Pippin states that during this time, she was better able to handle her own duties because Carter-Mead required less supervision.[35] Moreover, Carter-Mead had an outgoing personality, a trait that plaintiff admits she does not possess and that Pippin perceives to be important in a leader.[36]

On August 4, plaintiff was still on FMLA leave but was at the hospital completing computer-system training.[37] Pippin took this opportunity to call plaintiff into her office and tell her that she was not a good fit for her director role.[38] Among other things, Pippin mentioned that Carter-Mead had worked 20 hours "in a certain amount of time" and that it is hard to be flexible with a newborn and a family at home.[39] Pippin told Leach that she needed to think about what was best for her family and that she could work as a charge nurse on days or nights.[40]

## 2. Summary-judgment standard

Summary judgment is warranted when there is no genuine issue of material fact and the moving party is entitled to judgment

---

[30] Doc. 29-3 at 43.
[31] *Id.* at 40, 42.
[32] *Id.* at 45; Doc. 29-4 at 15.
[33] Doc. 29-1 at 26.
[34] Doc. 29-7 at 3.
[35] *Id.*
[36] Doc. 29-1 at 71; Doc. 29-4 at 8; Doc. 29-7 at 3.
[37] Doc. 29-4 at 13.
[38] Doc. 29-1 at 4; Doc. 29-4 at 13.
[39] Doc. 29-1 at 4–5, 32.
[40] *Id.*

as a matter of law.[41] The moving party bears the initial burden of showing that there is an absence of evidence to support the non-moving party's case.[42]

If the moving party meets its initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-movant to show the existence of a genuine issue for trial.[43] The non-movant "must do more than simply show there is some metaphysical doubt as to the material facts."[44] Instead, the non-movant must "come forward with 'specific facts showing that there is a genuine issue for trial.'"[45] The movant is entitled to judgment as a matter of law if the non-movant fails to meet its burden.[46] When deciding a motion for summary judgment, a court considers the pleadings and other parts of the record, including documents and depositions.[47] The court is required to consider cited materials but may consider other materials in the record as well.[48]

## 3. Discussion

### A. FMLA interference

The claim that defendant unlawfully interfered with plaintiff's right to FMLA leave, by demoting her during that leave, must be resolved by a jury. Defendant's objection as to this claim is overruled.

Congress enacted FMLA so that employees could, among other things, "take reasonable leave . . . for the birth or adoption of a child."[49] To that end, eligible employees are entitled to take up to 12 weeks of leave per year to care for their newborns.[50] "The FMLA

---

[41] Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[42] *Celotex*, 477 U.S. at 325.
[43] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986).
[44] *Id.* at 587.
[45] *Id.* (quoting Fed. R. Civ. P. 56(e)).
[46] *See Celotex*, 477 U.S. at 323.
[47] Fed. R. Civ. P. 56(c).
[48] *Id.*
[49] *Elsensohn v. St. Tammany Parish Sheriff's Off.*, 530 F.3d 368, 372 (5th Cir. 2008).
[50] 29 U.S.C. § 2612(a)(1).

creates two types of protections—entitlement rights (sometimes also called prescriptive rights) and proscriptive rights."[51] The first type of protection entitles an employee to return to the same position after a qualified absence.[52] The employee is legally entitled to this right regardless of the intent of the employer in denying it.[53] Suits to vindicate that right are known as interference claims. The second type of protection protects employees from retaliation or discrimination on account of exercising their FMLA rights.[54] Suits to vindicate that right are known as retaliation claims, and they require proof of the employer's intent.[55]

The FMLA creates a prescriptive right "to be restored by the employer to the position of employment held by the employee when the leave commenced."[56] An employee is entitled to such reinstatement even if the employee has been replaced or his position has been restructured to accommodate the employee's absence.[57] The right is not unlimited, however. An employee is not entitled to "any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave."[58]

Defendant argues that there is no material factual dispute that "regardless of [plaintiff]'s FMLA leave, [defendant] would have removed her from the DON position."[59] In support, defendant cites to plaintiff's leadership and communication issues, as evidenced by her

---

[51] *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 526 (5th Cir. 2021).

[52] *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999).

[53] *Id.*

[54] *Id.*

[55] *See Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 350 (5th Cir. 2013) (Elrod, J., concurring).

[56] 29 U.S.C. § 2614(a)(1)(A); *see Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 580 (5th Cir. 2006) (noting that "[a]n employee's right to return to the same position after a qualified absence falls under this category").

[57] 29 C.F.R. § 825.214.

[58] *Shirley v. Precision Castparts Corp.*, 726 F.3d 675, 681 (5th Cir. 2013); 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period.").

[59] Doc. 32 at 3.

- 6 -

PIP and subpar survey results.[60] And, in February 2021, according to defendant, Pippin and Clark discussed the need to remove plaintiff from the DON position."[61]

Pippin and Clark may have discussed removing plaintiff in February 2021. But, in Pippin's own words, they "decided against it" because "[t]here had recently been a surge in COVID-19 cases, and [the hospital] was experiencing ongoing staffing challenges."[62] Pippin swears that, by the time plaintiff's leave began in June, she "did not think it was possible for [plaintiff] to succeed in a leadership role, based on [Pippin's] ongoing observation of [plaintiff's] performance."[63] Although Pippin documented plaintiff's progress while she was on her PIP, there are no notes regarding plaintiff's performance from March to June.[64] Pippin avers that, in July, she decided "based on [her] own observations and feedback received from others," that "it was in the best interest of [the hospital] to remove [plaintiff] from the leadership position."[65]

The ultimate question for the trier of fact will be whether plaintiff would have been removed from her leadership role had she "been continuously employed during the FMLA leave period."[66] Because there is evidence that the COVID surge had not ended by August[67] and that Pippin and Clark preferred to work with plaintiff on her leadership skills as opposed to "le[aving] a leadership position vacant at a critical time,"[68] it is possible that a juror could conclude that, had plaintiff been continuously employed, she would not have been removed from her leadership position at that time. Of course, it is also possible that a juror could conclude that plaintiff would have been removed for performance reasons. But that simply shows a genuine factual dispute that requires a trial on the issue. So defendant's

---

[60] *Id.* at 2.

[61] *Id.* at 3.

[62] Doc. 29-7 at 2.

[63] *Id.* at 3.

[64] *See* Doc. 29-4 at 19.

[65] Doc. 29-7 at 3.

[66] 29 C.F.R. § 825.216(a).

[67] *See* Doc. 29-1 at 5 (Leach explaining that one of the topics she discussed with Pippin during her demotion was the "re-surge of COVID").

[68] Doc. 32 at 7.

motion for summary judgment on plaintiff's claim for FMLA inter-ference is denied.[69]

### B.  FMLA retaliation

The report and recommendation found sufficient evidence to preclude the grant of summary judgment on plaintiff's FMLA-retaliation claim, which requires proof of an employer's retaliatory or discriminatory intent. Defendant objects to that finding for two reasons. First, defendant argues that whether plaintiff requested an 11-day extension of her FMLA leave is not a material fact. Second, defendant argues that no evidence allows a reasonable factual infer-ence that its given reasons for demoting plaintiff (performance inad-equacies) were pretext concealing discrimination for taking leave. Defendant's second objection is sustained and is sufficient to entitle defendant to summary judgment on this claim.

Although motive is irrelevant for the FMLA-interference claim, it is relevant for the FMLA-retaliation claim. For this reason, the *McDonnell Douglas* burden-shifting framework applies in the absence of direct evidence of discrimination.[70] Once plaintiff makes out a prima facie case of discrimination, "the burden shifts to the em-ployer to articulate a legitimate, nondiscriminatory reason for the ad-verse employment action."[71] Then, "the burden shifts back to the employee to show by a preponderance of the evidence that the em-ployer's articulated reason is a pretext for discrimination."[72]

Plaintiff alleges that defendant retaliated against her for request-ing an additional 11 days of FMLA leave on July 23, 2021. The mag-istrate judge found that the close temporal proximity between this request and plaintiff's demotion satisfied the causal-connection

---

[69] Plaintiff also brought a FMLA-interference claim based on defendant asking her to complete computer training during her leave. The magistrate judge recom-mended granting summary judgment in favor of defendant on that claim, and plaintiff did not object. Finding no clear error in this conclusion, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1420 (5th Cir. 1996) (en banc), the magis-trate judge's recommendation is adopted, and defendant's motion for summary judgment on this ground is granted.

[70] *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 835 (5th Cir. 2020).

[71] *Tatum v. S. Co. Servs., Inc.*, 930 F.3d 709, 713 (5th Cir. 2019).

[72] *Id.*

element of a prima facie case.[73] That conclusion is assumed to be correct here.

In response, defendant carried its burden to identify a nondiscriminatory reason for the demotion by proffering that it fired plaintiff for her "shortcomings as a leader."[74] Removing a person from a leadership position for performance reasons, not because she took FMLA leave, is a legitimate reason that shifts the burden back to the plaintiff in a FMLA-retaliation claim.

Plaintiff does not identify facts in the summary-judgment record that would allow a reasonable inference that defendant's stated reason for the demotion is pretextual. Plaintiff offers no rationale for why Pippin would be motivated to retaliate or why an 11-day extension would have been the "tipping point."[75] Indeed, plaintiff's extension would have resulted in Carter-Mead filling in as DON for a longer period of time, a state of affairs that Pippin preferred.[76] The only reasonable conclusion based on this record is that plaintiff was demoted because Carter-Mead had traits that Pippin felt made for a better leader.[77]

As noted above, that conclusion does not necessarily establish that plaintiff would have lost her job when she did had she not taken FMLA leave. It is possible for a jury to conclude that, had plaintiff not taken leave, she would have been retained in her position for some additional period of time while she was coached. But no reasonable juror could conclude that Pippin retaliated against plaintiff

---

[73] Doc. 43 at 11; *see Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a prima facie case of retaliation.").

[74] Doc. 29 at 19.

[75] The magistrate judge correctly concluded that plaintiff's assertion that "Pippin demoted her because she might request additional FMLA leave in the future to care for her newborn" was "pure speculation." Doc. 43 at 12.

[76] *See* Doc. 29-7 at 3 ("While Leach was out on leave, I observed significant improvement in employee engagement. I was also better able to handle my own CNO duties, since Carter-Mead did not require constant supervision as Leach had.").

[77] *See, e.g., id.* ("Carter-Mead possessed all of the qualities of a leader that Leach did not, such as an outgoing personality and a desire to engage with staff.").

for requesting an 11-day extension of her leave. Therefore, defendant's objection is sustained and its motion for summary judgment is granted on plaintiff's FMLA-retaliation claim.

**C.  Title VII sex-discrimination claim**

Lastly, defendant objects to the recommendation that summary judgment be denied on plaintiff's claim of sex discrimination in violation of Title VII. The report relied on comments made to plaintiff by her supervisor when she was demoted, which both parties summarize as: (1) "Carter-Mead worked over [twenty] hours in the last several days"; (2) "it would be hard for [plaintiff] to be flexible at times with a newborn at home"; and (3) "[plaintiff] needed to think about what was best for her family."[78]

Defendant argues that these comments would not allow a reasonable factfinder to rationally infer a discriminatory motive for the demotion under all the circumstances. The court agrees. The first statement concerns the number of hours that Carter-Mead had worked, which is an observation about his perceived better performance and not about his or plaintiff's gender. The second statement concerning the difficulties of being flexible with a newborn at home applies to men as well as women and was rooted in conversations that plaintiff had with Pippin, not in a stereotype or generalization.[79] Moreover, plaintiff agreed that her replacement who had no children "has more of a flexible, per se, schedule."[80] The third comment again did not mention gender and applies equally to men and women. There is no evidence from which a jury could reasonably conclude that it invoked stereotypes or was anything more than a comment about the position that plaintiff wanted to take on next given that plaintiff had expressed concerns to Pippin regarding her work schedule.[81] Because one of plaintiff's children was starting preschool

---

[78] Doc. 30 at 14; Doc. 32 at 10–11.

[79] *See* Doc. 29-1 at 35 (Leach recounting a conversation she had with Pippin regarding rearranging her schedule in light of her daughter entering preschool and the responsibilities of a newborn); Doc. 29-4 at 13 (Pippin noting that she and plaintiff had "multiple conversations about work[-]life balance and family").

[80] Doc. 29-1 at 31.

[81] *Id.* at 30.

soon, she "wasn't for sure . . . if [her daughter] would get to ride the bus . . . or if [plaintiff] would have to take her and then pick her up."[82]

Moreover, even accepting for the sake of analysis plaintiff's arguments that a jury could find that these comments reflected stereotypes about women (as opposed to plaintiff's own prior communications about her personal circumstances), no reasonable juror could conclude that plaintiff was removed from her position because of those stereotypes.[83] No fact in the summary-judgment record would allow a jury to conclude that defendant's stated reason for the demotion was pretextual or that Pippin did not sincerely believe that plaintiff's replacement exhibited characteristics more in line with what she felt the position required.[84] For those reasons, a reasonable juror could not conclude that plaintiff's demotion was motivated by her gender as opposed to her perceived shortcomings as a leader and her replacement's comparative strengths. Summary judgment for defendant is thus appropriate on plaintiff's Title VII claim.

### 4.  Conclusion

Having reviewed de novo the objected-to portions of the magistrate judge's report, the court (1) denies summary judgment on plaintiff's claim that defendant interfered with her FMLA leave by failing to restore her to her prior position, which will proceed to trial as scheduled, and (2) grants summary judgment to defendant on plaintiff's remaining claims.

---

[82] *Id.* at 5.

[83] *See Price v. Fed. Exp. Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (noting that "the plaintiff must substantiate [her] claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision").

[84] *See Little v. Republic Refin. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (noting that even an incorrect belief as to job performance constitutes a legitimate, nondiscriminatory reason for adverse employment action).

*So ordered by the court on December 18, 2023.*

J. CAMPBELL BARKER
United States District Judge